UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SERGIO REYES-BROOKS,

                        Petitioner,

      v.

MIKE OBENLAND,

                    Respondent.

Case No. C14-1932 RSM-BAT

**REPORT AND
RECOMMENDATION**

      Petitioner Sergio Reyes-Brooks seeks 28 U.S.C. § 2254 habeas relief from his convictions of first degree murder and unlawful possession of a firearm.  Dkt. 9, Exhibit 1.   Mr. Reyes-Brooks presents twelve grounds for habeas relief in his petition.  The Court recommends **DISMISSING** Claims 1, 4, 5, 6, and 7 because they are not exhausted and are procedurally barred.  The Court recommends **DENYING** Claims 2, 3, 8, 9, 10, 11, and 12 as Mr. Reyes-Brooks has failed to demonstrate that the state-court adjudication of these claims was contrary to, or an unreasonable application of, established federal law, or was an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(1)–(2).  The Court also recommends **DENYING** an evidentiary hearing and issuance of a certificate of appealability.

## BACKGROUND

**A.**    **Statement of Facts**

      The Washington Court of Appeals summarized the facts as follows:

REPORT AND RECOMMENDATION- 1

The charges in this case arose from an incident in 2006. Reyes-Brooks and Ray Porter were upset with Dominque McCray. They and Porter's girlfriend, Crystal Moore, drove McCray to a secluded dead-end street, where they forced McCray to strip naked at gunpoint. McCray tried to flee, but Porter shot him once in the back and once in the head with a .380 Grendel semiautomatic handgun. Reyes-Brooks then exited the car, walked over to McCray, and fired a single shot into the back of his head with a .357 revolver. Police found McCray's body lying in the middle of the street. They also found two .380 shell casings and a bullet fragment at the scene.

Later that night, King County sheriff's deputies responded to a shooting at a party attended by Reyes-Brooks, Porter, and Moore. As officers began to separate the people at the party and take witness statements, Porter shot and killed a deputy. Then he shot and killed himself. Deputies recovered a .380 handgun at the scene of Porter's death. Ballistics testing confirmed that a bullet recovered from McCray was fired from this same gun.

When deputies questioned Moore, she told them about McCray's murder. Deputies impounded Reyes-Brooks's car and found a .357 revolver under the driver's seat. Ballistics testing confirmed that the shot into the back of McCray's head came from this gun. The handle, hammer, and trigger area of the gun contained DNA (deoxyribonucleic acid) matching that of three people, including Reyes-Brooks, and DNA from small drop of blood found on it matched McCray's DNA. Police also found shoes at Reyes-Brooks's home stained with blood in a high velocity impact spatter. DNA tests showed that the blood matched McCray's.

The State charged Reyes-Brooks with one count of first-degree murder with a firearm enhancement and one count of unlawful possession of a firearm. A jury returned guilty verdicts on the first-degree murder and unlawful possession charges. In addition, the jury answered "yes" on a special verdict for a firearm enhancement.

Reyes-Brooks stipulated that he had previously been convicted of serious offenses. The court sentenced him as a persistent offender to life imprisonment without the possibility of parole. The court based its sentence on two prior convictions: a 1998 conviction for first-degree robbery and a 2003 conviction for first-degree burglary.

Dkt. 9, Exhibit 2, at 2-3.

**B.    Statement of Procedural History**

Mr. Reyes-Brooks appealed from his judgment and sentence to the Washington Court of Appeals.  Dkt. 9, Exhibit 3 (Brief of Appellant); Exhibit 5 (Statement of Additional Grounds).

REPORT AND RECOMMENDATION- 2

The Washington Court of Appeals vacated the firearm sentencing enhancement but otherwise affirmed the convictions and the sentence.  *Id.*, Exhibit 2.

Mr. Reyes-Brooks sought review by the Washington Supreme Court of the decision to the extent it affirmed his convictions and sentence.  *Id.*, Exhibit 6.  He presented three issues to the Washington Supreme Court, summarized as follows:

> 1)      A jury instruction that requires the jury to be unanimous to find the state had not proven the special verdict beyond a reasonable doubt is erroneous and the enhancement must be stricken.
>
> 2)      Different punishments for recidivist criminals create an arbitrary classification in violation of the Fourteenth Amendment's equal protection clause.
>
> 3)      Violation of Reyes-Brooks' Sixth and Fourteenth Amendment rights when a judge, not a jury, found by a preponderance of the evidence that he had two prior most serious offenses.

Dkt. 9, Exhibit 6, at 1-3.

The prosecutor also sought review of that portion of the decision vacating the firearm sentencing enhancement.  Dkt. 9, Exhibit 7.  The Washington Supreme Court denied Mr. Reyes-Brooks' petition for review, granted the prosecution's petition for review, and remanded the case for reconsideration in light of *State v. Nunez*, 174 Wn.2d 707, 285 P.3d 21 (2012).  *Id.*, Exhibit 9. On remand, the Washington Court of Appeals affirmed the entire judgment and sentence on November 13, 2012.  *Id.*, Exhibit 10.  Mr. Reyes-Brooks did not seek further review by the Washington Supreme Court.  The Washington Court of Appeals issued its mandate on January 18, 2013.  *Id.*, Exhibit 11.

In January 2013, Mr. Reyes-Brooks filed a personal restraint petition in the Washington Court of Appeals.  Dkt. 9, Exhibit 12.  The Washington Court of Appeals denied the personal restraint petition.  *Id.*, Exhibit 15.  Mr. Reyes-Brooks sought review by the Washington Supreme Court, in which he presented five issues, summarized as follows:

REPORT AND RECOMMENDATION- 3

1)      The state withheld material, exculpatory evidence in violation of *Brady* and Reyes-Brooks' Fifth, Sixth, and Fourteenth Amendment rights.

2)      The state violated Reyes-Brooks' due process rights and his Sixth and Fourteenth Amendment rights by restricting him of the Compulsory Process for obtaining witnesses.

3)      Trial counsel rendered ineffective assistance when he failed to propose an instruction to lessen the effect of highly prejudicial testimony in violation of Reyes-Brooks' Sixth and Fourteenth Amendment rights to effective counsel.

4)      Reyes-Brooks was denied a *Franks* hearing in violation of his Fifth, Sixth and Fourteenth Amendment rights.

5)      Reyes-Brooks was denied a fair trial when the trial court allowed prejudicial testimony in violation of his Fifth, Sixth and Fourteenth Amendment rights.

Dkt. 9, Exhibit 16, at 1-2.

The Washington Supreme Court denied review on July 3, 2014.  Dkt. 9, Exhibit 17.  The Washington Court of Appeals issued a certificate of finality on October 17, 2014.  *Id.*, Exhibit 18.

## GROUNDS FOR REVIEW

Included in the memorandum in support of his habeas petition, Mr. Reyes-Brooks sets forth twelve grounds for federal habeas review, summarized as follows:[1]

1)      Reyes-Brooks was denied a fair trial when the trial court misstated the law on jury unanimity regarding the firearm enhancement.

2)      Reyes-Brooks was denied a fair trial when the jury did not make a persistent offender finding beyond a reasonable doubt.

3)      Reyes-Brooks was denied a fair trial where the trial court imposed a sentence beyond the maximum term based upon prior convictions that were not found by a jury beyond a reasonable doubt.

---

[1] The grounds are numbered separately under various headings in Mr. Reyes-Brooks' memorandum.  For ease of reference, they are numbered sequentially herein.

REPORT AND RECOMMENDATION- 4

4)     Reyes-Brooks was denied a fair trial when the trial court denied several defense motions for dismissal or continuance to allow sufficient time to prepare for trial.

5)     Reyes-Brooks was denied a fair trial when, during recess a relative of the victim was seen talking to seated juror, and where the court did not conduct the requisite test for possible juror excusal.

6)     Reyes-Brooks was denied a fair trial when the trial court rejected his Duress Defense despite sufficient evidence supporting such a defense.

7)     Reyes-Brooks was denied a fair trial when the trial court, relying on Crystal Moore's erroneous testimony, denied the defense motion on insufficient evidence.

8)     Reyes-Brooks was denied a fair trial when the prosecutor withheld material evidence in violation of *Brady.*

9)     Reyes-Brooks was denied a fair trial when the prosecutor restricted his right to access State witnesses.

10)    Reyes-Brooks was denied a fair trial when his trial counsel failed to propose a jury instruction limiting the effect of other crimes or bad act evidence before the jury.

11)    Reyes-Brooks was denied a fair trial when the trial court failed to hold a *Franks* hearing.

12)    Reyes-Brooks was denied a fair trial when the trial court allowed prejudicial testimony of Deputy Cox's murder to be heard by the jury where there was no evidence that Reyes-Brooks was involved in that murder.

Dkt. 3-1, at 8-11.

## EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.  In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

REPORT AND RECOMMENDATION- 5

1   the state court.  *Cullen v. Pinholster*, ---U.S.---, 131 S.Ct. 1388 (2011).  A hearing is not required

2   if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d).  *Landrigan,*

3   550 U.S. at 474.  "It follows that if the record refutes the applicant's factual allegations or

4   otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

5   *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011).  The Court finds it unnecessary to hold an

6   evidentiary hearing because Mr. Reyes-Brooks' claims may be resolved on the existing state

7   court record.

**DISCUSSION**

8

9   **A.      Exhaustion**

10           Respondent argues that Mr. Reyes-Brooks failed to properly exhaust Claims 1, 4, 5, 6,

11   and 7 (Claims 2 and 3 in the "Grounds for Review" section and Claims 1-5 in the "Personal

12   Restraint Petition" section of the memorandum).  Respondent contends that these claims are also

13   now procedurally barred under state law and not cognizable in federal court absent a showing of

14   cause and prejudice, or actual innocence.  Dkt. 8, p. 7.  The Court agrees.

15           **1.      Failure to Exhaust**

16           A petitioner must properly exhaust state remedies before seeking a federal writ of habeas

17   corpus.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To properly exhaust, the petitioner must give

18   the state court a fair opportunity to correct the alleged violation of federal constitutional rights.

19   *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  This means that the prisoner must fairly present his

20   claim in each appropriate state court (including a state supreme court with powers of

21   discretionary review), thereby alerting that court to the federal nature of the claim.  *Baldwin*,

22   541 U.S. at 29; *see also Picard v. Connor*, 404 U.S. 270, 276-78 (1971); *O'Sullivan v. Boerckel*,

23   526 U.S. 838 (1999).  The petitioner bears the burden to prove a claim has been properly

1 exhausted.  *Lambrix v. Singletary*, 520 U.S. 518, 523-24 (1997).

2       If a petitioner fails to obey state procedural rules, the state court may decline review of a

3 claim based on that procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  If

4 the state court clearly and expressly states that its judgment rests on a state procedural bar, the

5 petitioner is barred from asserting the same claim in a habeas proceeding.  *Harris v. Reed*, 489

6 U.S. 255, 263 (1989); *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993); *Shumway v. Payne*,

7 223 F.3d 982 (9th Cir. 2000).

8       Mr. Reyes-Brooks presented Claim 1 to the Washington Supreme Court in his petition for

9 review on direct appeal as an issue of state law only.  Dkt. 9, Exhibit 6.  He failed to present the

10 claim as a federal claim.  *Id.*  In addition, although Mr. Reyes-Brooks may have presented the

11 remaining claims (Claims 4, 5, 6, and 7) to the Washington Court of Appeals, he did not raise

12 these claims in either his petition for review on direct appeal, or in his motion for discretionary

13 review on collateral review.  *Id.*, Exhibits 6 and 16.  Therefore, Mr. Reyes-Brooks did not

14 properly exhaust Claims 1, 4, 5, 6, or 7 because he failed to fairly present these claims as federal

15 claims in each appropriate state court.

16       Washington law bars a defendant from filing a personal restraint petition more than one

17 year after the defendant's judgment becomes final.  RCW 10.73.090.  Mr. Reyes-Brooks'

18 judgment became final in January 2013, when the Washington Court of Appeals issued the

19 mandate.  Dkt. 9, Exhibit 11.  Because the mandate issued more than one year ago, Mr. Reyes-

20 Brooks is now time barred from presenting Claims 1, 4, 5, 6, and 7 to the Washington Supreme

21 Court.  Thus, the claims are now procedurally barred under state law and are not cognizable in

22 federal court absent a showing of cause and prejudice or actual innocence.

23

REPORT AND RECOMMENDATION- 7

### 2.     Cause and Actual Prejudice or Actual Innocence

Unless it would result in a "fundamental miscarriage of justice," a petitioner who procedurally defaults may receive review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. *Coleman v. Thompson*, 501 U.S. at 750. The petitioner must show an objective factor actually caused the failure to properly exhaust a claim. Interference by state officials, the unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance of counsel may constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner's own inadequacies are not sufficient cause to excuse a procedural default. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 907-09 (9th Cir. 1986); *Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991). "An evidentiary hearing is not necessary to allow a petitioner to show cause and prejudice if the court determines as a matter of law that he cannot satisfy the standard." *Clark v. Lewis*, 1 F.3d 814, 820 (9th Cir. 1993).

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. at 496). "To meet this manifest injustice exception, [the petitioner] must demonstrate more than that 'a reasonable doubt exists in the light of the new evidence.'" *Wood*, 130 F.3d at 379 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Mr. Reyes-Brooks cannot demonstrate cause and prejudice or a fundamental miscarriage of justice.  He cannot show cause, i.e., an objective external factor outside his control that excused his procedural default.  He also does not show prejudice, i.e., that an error of constitutional proportions infected his whole trial.  Mr. Reyes-Brooks has not produced any evidence of actual innocence that would excuse his procedural default.  Because he cannot excuse his procedural default, Claims 1, 4, 5, 6, and 7 are not cognizable in the habeas corpus proceeding and they should therefore be dismissed.

**B.     Claims 2 and 3 – Superior Court Sentencing**

The superior court sentenced Mr. Reyes-Brooks to life imprisonment without parole under Washington's three strikes law based on his prior convictions.  Dkt. 9, Exhibit 1.  In Claims 2 and 3, Mr. Reyes-Brooks contends that his sentence violates the Sixth and Fourteenth Amendments because a jury did not find the fact of the prior convictions beyond a reasonable doubt.  The Washington Court of Appeals, applying *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), rejected this argument:

> While the State must generally prove every element of an offense charged beyond a reasonable doubt, traditional sentencing factors, such as prior criminal history, are not elements of the crime charged. [footnote omitted]  In *Blakely,* the United States Supreme Court held that "'*[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"   Further, the Washington Supreme Court "has repeatedly rejected" the argument that due process requires the fact of a prior conviction to be submitted to a jury and proved beyond a reasonable doubt for sentencing purposes. [footnote omitted]  The federal and state constitutions and the POAA allow the trial judge to determine by a preponderance of the evidence the existence of prior convictions used to enhance a sentence. [footnote omitted]

Dkt. 9, Exhibit 2, at 14-15.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court expressly exempted the fact of a prior conviction from the facts that a

REPORT AND RECOMMENDATION- 9

jury must find beyond a reasonable doubt in order to impose a sentence above the statutory

standard range.  The Court held that "[o]ther than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to

a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court

extended *Apprendi,* holding for the first time that the "statutory maximum" for purposes of an

*Apprendi* analysis includes not only the statutory maximum for an offense, but also the top end

of a statutorily established standard range for the offense.  *Blakely*, 542 U.S. at 303-04.  As in

*Apprendi*, however, the *Blakely* Court noted the exception for exceptional sentences based on

"the fact of a prior conviction."  *Id.  See also, Almendarez-Torres v. United States*, 523 U.S. 224,

266 and 228-35 (1998) (a statute increasing the penalty for a deported alien who returns without

permission based on a prior conviction does not create a separate crime and does not need to be

proven to the jury beyond a reasonable doubt).

       Mr. Reyes-Brooks fails to show that the state court adjudication of this issue was contrary

to, or involved an unreasonable application of clearly established federal law.  In addition, relief

on this issue is not available because the relief requested is barred under the non-retroactivity

doctrine of *Teague v. Lane*, 489 U.S. 288 (1989), which holds that a new rule may not be

announced or applied in a habeas case (a rule is new if "the result was not *dictated* by precedent

existing at the time the defendant's conviction became final."  *Caspari v. Bohlen*, 510 U.S. 383,

390 (1994) (quoting *Teague v. Lane*, 489 U.S. at 301) (emphasis in original)).

       Mr. Reyes-Brooks contends further that treating his prior convictions as sentencing

factors rather than elements violated his right to equal protection.  Equal protection claims

concerning post-conviction sentencing are reviewed under the rational basis test.  *McQueary v.

Blodgett*, 924 F.2d 829, 834 (9th Cir. 1991); *Foster v. Washington State Board of Prison Terms*

1  *and Paroles*, 878 F.2d 1233, 1235 (9th Cir. 1989).  "Improvement in sentencing is [a] rational

2  government purpose."  *McQueary*, 924 F.2d at 834 (quoting *Foster*, 878 F.2d at 1235).  Even if

3  some offenders receive more lenient sentences, there is no equal protection violation:  "A mere

4  demonstration of inequality is not enough; the Constitution does not require *identical* treatment.

5  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a

6  cognizable claim arises: it is a 'settled rule that the Fourteenth Amendment guarantees equal

7  laws, not equal results.'"  *McQueary*, 924 F.2d at 835 (emphasis in original) (quoting *Personnel*

8  *Adm'r v. Feeney*, 422 U.S. 256, 273 (1979)).

9        In *State v. Thorne*, 129 Wn.2d 736, 770-72, 921 P.2d 514 (1996), the Washington

10  Supreme Court rejected an equal protection challenge to Washington's Persistent Offender

11  Accountability Act, finding that the classification of criminals as "persistent offenders" based on

12  having committed three serious offenses is rationally related to the goals enunciated in the Act

13  and that the state is justified in punishing a recidivist more severely than it punishes a first

14  offender.)

15        With regard to Mr. Reyes-Brooks' equal protection claim, the Washington Court of

16  Appeals held:

17        Reyes-Brooks challenges the validity of the Persistent Offender
        Accountability Act (POAA), chapter 9.94A.570 RCW.  He notes that when proof
18      of a prior conviction is an element of a crime, the State must prove its existence to
        a jury beyond a reasonable doubt, [footnote omitted] but when the same
19      conviction is a sentencing aggravator that elevates a felony to an offense requiring
        a life sentence without parole, as was the case here, a judge may determine the
20      existence of the prior conviction by a preponderance of the evidence. [footnote
        omitted]  This, Reyes-Brooks contends, violates the equal protection clause of the
21      Fourteenth Amendment and article 1, section 12 of the Washington Constitution
        because it allows the State to prove the existence of prior convictions to a judge
22      rather than to a jury and by a lower standard of proof. [footnote omitted]

23        Division Three of this court recently rejected a similar claim in State v.
        Williams, [footnote omitted] concluding that this distinction is rationally related to

REPORT AND RECOMMENDATION- 11

1    the purpose of the POAA.  We agree and reject Reyes-Brooks's claim.

2    Dkt. 9, Exhibit 2, at 13-14.

3        Mr. Reyes-Brooks does not show disparate treatment from similarly situated offenders.

4    Moreover even if he could, enhancing an offender's sentence based upon the fact of prior

5    convictions does not violate equal protection.  *United States v. Locke*, 918 F.2d 841, 842 (9th

6    Cir. 1990).

7        Mr. Reyes-Brooks fails to show that the state court adjudication of his claims was

8    contrary to or an unreasonable application of clearly established federal law and therefore,

9    Claims 2 and 3 should be denied.

10   **C.**      **Claim 8 - *Brady* Violation**

11        In Claim 8, Mr. Reyes-Brooks alleges that the prosecution withheld evidence in violation

12    of *Brady v. Maryland*, 373 U.S. 83 (1963).

13        The Constitution requires that the prosecution disclose evidence that is "both favorable to

14    the accused and 'material either to guilt or to punishment.'"  *United States v. Bagley*, 473 U.S.

15    667, 674 (1985) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  Evidence is material "if

16    there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

17    the proceeding would have been different."  *Kyles v. Whitely*, 514 U.S. 419, 433–34 (1995)

18    (citing *Bagley*, 473 U.S. at 682).  "A 'reasonable probability' is a probability sufficient to

19    undermine confidence in the outcome."  *Kyles*, 514 U.S. at 434 (citing *Bagley*, 473 U.S. at 678).

20    The prosecution must disclose only evidence that is in the prosecutor's possession, custody or

21    control.  *Kyles*, 514 U.S. at 437-38.  "The government has no obligation to produce information

22    which it does not possess or of which it is unaware."  *Sanchez v. United States*, 50 F.3d 1448,

23    1453 (9th Cir. 1995).

REPORT AND RECOMMENDATION- 12

1    The failure to preserve "potentially useful evidence" does not constitute a denial of due

2    process unless a criminal defendant can show bad faith on the part of police.  *Arizona v.*

3    *Youngblood*, 488 U.S. 51, 57–58 (1988).  To demonstrate a due process violation from the failure

4    to secure and preserve evidence, the petitioner must establish: (1) that the State officials acted in

5    bad faith; (2) that the evidence had an exculpatory value that was apparent before it was

6    destroyed; and (3) that destruction of the evidence prejudiced the defense because the petitioner

7    could not obtain comparable evidence by other reasonably available means.  *Villafuerte v. Lewis*,

8    75 F.3d 1330, 1340 (9th Cir. 1996).   The petitioner must also show prejudice by showing the

9    evidence was material to the outcome of the trial.  *Strickler v. Greene*, 527 U.S. 263, 281-82

10   (1999).  "[T]he question is whether 'the favorable evidence could reasonably be taken to put the

11   whole case in such a different light as to undermine confidence in the verdict.'" *Id.* at 290.

12       The Washington Court of Appeals rejected Mr. Reyes-Brooks' *Brady* claim:

13       Crystal Moore, the eyewitness to the shooting, was interviewed three
         times by Detective Christina Bartlett.  All three interviews were recorded.  The

14       first time she was interviewed, shortly after the shooting of Deputy Cox, Moore
         was both hysterical and heavily intoxicated.  She fought with officers and could

15       not walk on her own.  As Detective Bartlett attempted to ask her questions, Moore
         would hyperventilate, get on her knees and pray, or beat her head on the floor and

16       walls of the interview room.  Detective Bartlett became concerned about her
         health and had Moore transported to Harborview Medical Center.  Detective

17       Bartlett had more productive interviews with Moore the following day and again
         two days after that.  The tape of the first interview was somehow lost by the

18       Seattle Police Department when it was sent to be transcribed.

19       Reyes-Brooks argues that the State violated *Brady* when the tape of the
         first interview was lost.  He speculates that the evidence was favorable to him

20       because the deputy prosecutor, in response to a question from the trial court,
         stated that Moore did not implicate Reyes-Brooks until the second interview.

21       However, Detective Bartlett testified that Moore did not do much of anything
         during the first interview other than exhibit bizarre and concerning behavior.

22       Reyes-Brooks does not meet his burden under *Brady* to show the evidence was
         favorable to him.

23

REPORT AND RECOMMENDATION- 13

Additionally, Reyes-Brooks does not show that he was prejudiced by the loss of the recording. Prejudice exists "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *In re Personal Restraint of Benn*, 134 Wn.2d 868, 916, 952 P.2d 116 (1998). To the extent that Reyes-Brooks believes that the interview would have impeached Moore's credibility, Moore's credibility was already very poor. In introducing Moore in its opening statement, the State admitted that Moore was mentally ill, had a significant criminal history, and had received immunity from prosecution in exchange for testifying. Furthermore, the physical evidence linking Reyes-Brooks to the murder, including his DNA and blood spatter analysis, was substantial. Reyes-Brooks does not demonstrate that the loss of the recording had any effect on the outcome of the trial.

Reyes-Brooks argues that the state also violated *Brady* by failing to produce records contained in Moore's Child Protective Services (CPS) file prior to trial. This claim also fails. Under *Brady*, the State is not required to turn over materials not under its control. *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011). Neither the State nor the defense had access to Moore's CPS records until the trial court entered an order to compel their production on February 27, 2009.

Dkt. 9, Exhibit 15, at 2-4.

The Washington Supreme Court also rejected Mr. Reyes-Brooks *Brady* claim:

Mr. Reyes-Brooks first argues that the State failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Under that decision, the State must disclose to a criminal defendant evidence that is favorable to the defense and material to the guilt or to punishment. But the mere possibility that evidence might help the defendant or might affect the outcome does not make the evidence material. *State v. Blackwell*, 120 Wn.2d 822, 828, 845 P.2d 1017 (1993). The question is whether the absence of the evidence undermines confidence in the outcome. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 916, 952 P.2d 116 (1998).

Mr. Reyes-Brooks does not demonstrate materiality. Crystal Moore was with Mr. Reyes-Brooks and Ray Porter when they killed Dominque McCray. Ms. Moore was interviewed three times by detective Christina Bartlett. During the first interview, which occurred after Ms. Moore was arrested on the evening of the murder, Ms. Moore was intoxicated and hysterical and fought with the officers. The detective stopped the interview and sent Ms. Moore to the hospital for evaluation. Once Ms. Moore had been stabilized, the detective conducted two more interviews with her during which she implicated Mr. Reyes-Brooks in the murder. All three interviews were taped, but the State lost the first tape during transcription. Mr. Reyes-Brooks argues that the tape is material because Detective Bartlett testified at trial that Ms. Moore had implicated Mr. Reyes-

REPORT AND RECOMMENDATION- 14

Brooks during the second interview.  He reasons that if he could have presented evidence of the first interview showing that Ms. Moore did not implicate him at that time, it would undermine her credibility.  But as the acting chief judge noted, the State told the jury that Ms. Moore had a significant criminal history, suffered from mental illness, and had received immunity for testifying against Mr. Reyes-Brooks, all of which tended to undermine her credibility.  And given the strength of the evidence, the loss of the first interview tape does not undermine confidence in the verdict.  Moreover, Detective Bartlett testified that Ms. Moore revealed little information before being transported to the hospital.

Dkt. 9, Exhibit 17, at 1-2.

Mr. Reyes-Brooks must show that the prosecution acted with bad faith and that the failure to preserve the evidence prejudiced his defense.  The record reflects that Ms. Moore did not provide any information during her first interview and that her credibility was sufficiently undermined by other evidence.  The state court reasonably determined that Mr. Reyes-Brooks could not show the requisite prejudice because the tape of the first interview was not material.

Mr. Reyes-Brooks fails to show that the state court adjudication of Claim 8 was an unreasonable application of clearly established federal law and Claim 8 should therefore be denied.

**D.     Claim 9 – Late Disclosure of Discovery / Denial of Continuance**

In Claim 9, Mr. Reyes-Brooks alleges he was denied a right to access witnesses when the prosecutor provided late discovery of information regarding the prosecution's witnesses and the trial court denied a continuance to allow defense counsel more time to prepare after receipt of discovery regarding the witnesses.

The Washington Court of Appeals rejected this claim:

Citing discovery concerns, defense counsel twice moved to dismiss the charges or, alternatively, for a continuance or mistrial.  And after the trial court denied those motions, counsel filed a motion for reconsideration of that decision.  Reyes-Brooks claims that this demonstrates his counsel did not have time "to examine all the evidence."

REPORT AND RECOMMENDATION- 15

1
2
3
4
5

But Reyes-Brooks fails to establish any resulting prejudice.  Ample physical evidence links Reyes-Brooks to the murder.  Moore admitted to having been convicted of theft, forgery, and robbery.  She also testified that on the night of McCray's death, she used drugs and alcohol and was arrested for assaulting a police officer.  In addition, counsel questioned her about an immunity agreement she entered into with the State regarding the events of that evening.  Given the abundance of impeachment evidence used by counsel, her credibility was already in question, and any additional impeachment derived from further examination of the late discovery materials would have been redundant.

6   Dkt. 9, Exhibit 2, at 16; *see also* Exhibit 15, at 4 (ruling that the court had rejected the claim on

7   direct review, and Mr. Reyes-Brooks had not shown reason to reconsider the issue on collateral

8   review).

9   A judge's decision to deny a request for a continuance will be overturned only for an

10  abuse of discretion. *Morris v. Slappy,* 461 U.S. 1, 11-12 (1983); *Armant v. Marquez*, 772 F.2d

11  552, 556 (9th Cir. 1985).  To obtain relief based upon the denial of a continuance, the petitioner

12  must show the denial resulted in "actual prejudice". *Gallego v. McDaniel*, 124 F.3d 1065, 1072

13  (9th Cir. 1997); *United States v. Shirley*, 884 F.2d 1130 (9th Cir. 1989); *United States v. Nguyen*,

14  88 F.3d 812, 819 (9th Cir. 1996).

15  As explained by the Washington Court of Appeals, Mr. Reyes-Brooks failed to establish

16  any resulting prejudice as there was an abundance of impeachment evidence and Moore's

17  credibility was already in question.  Mr. Reyes-Brooks fails to show that the state court

18  adjudication was an unreasonable application of clearly established federal law and therefore,

19  Claim 9 should be denied.

20  **E.       Claim 10 – Ineffective Assistance – Limiting Instruction**

21  Mr. Reyes-Brooks alleges counsel was ineffective for not requesting a limiting

22  instruction when the prosecution introduced evidence that Ray Porter had killed Deputy Cox.

23

REPORT AND RECOMMENDATION- 16

1    Under the two-prong standard of *Strickland*, a petitioner must show that counsel's

2  performance was so deficient that it "fell below an objective standard of reasonableness."

3  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  He must also show the deficient

4  performance so prejudiced the defense that it deprived him of the right to a fair trial and caused

5  the state court proceedings to be unreliable.  *Id.* at 687.  A petitioner must satisfy both prongs.

6  *Id.* at 697.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*,

7  466 U.S. at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and

8  made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.

9    Applying the *Strickland* standard, the state courts rejected this claim:

10      Reyes-Brooks next argues that defense counsel was ineffective for failing
       to request a limiting instruction regarding Porter's killing of Deputy Cox.  In
11     order to establish ineffective assistance of counsel, Reyes-Brooks must
       demonstrate both (1) that defense counsel's representation fell below an objective
12     standard of reasonableness and (2) resulting prejudice.  *See Strickland v.
       Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d (1984); *see also
13     State v. Thomas*, 109 Wn.2d 222, 743 P.2d 816 (1987).  Reyes-Brooks also bears
       the burden of rebutting the strong presumption that counsel rendered effective
14     assistance and made all significant tactical decisions in the exercise of reasonable
       professional judgment.  *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d
15     1251 (1995).  Reyes-Brooks does not meet this burden.  The defense theory of the
       case was that Porter was the sole shooter of McCray and Porter had kidnapped
16     and terrorized Reyes-Brooks on the night of the shooting.  Testimony that Porter
       killed Deputy Cox supported defense counsel's arguments that Porter was the
17     perpetrator of both crimes.  Moreover, at no point did the State suggest that
       Reyes-Books had anything to do with Deputy Cox's death; in fact, during closing
18     argument, the deputy prosecutor specifically stated that Reyes-Brooks was not
       involved.  In light of this fact, as well as the strong physical evidence proving
19     Reyes-Brooks also shot McCray, Reyes-Brooks cannot show he was prejudiced
       by the lack of a limiting instruction.

20
   Dkt. 9, Exhibit 15, at 4-5.

21
   The Washington Supreme Court also rejected this claim:

22
       Mr. Reyes-Brooks also contends that defense counsel was ineffective in
23     failing to request a certain instruction.  After the murder of Ms. McCray, Mr.
       Reyes-Brooks, Mr. Porter, and Ms. Moore went to a party where an unrelated

REPORT AND RECOMMENDATION- 17

shooting occurred.  Deputy Steve Cox was one of the responding officers.  As Deputy Cox was interviewing party-goers in a back bedroom, including Mr. Porter, Mr. Porter killed the deputy and then took his own life.  Mr. Reyes-Brooks had no involvement in Deputy Cox's murder.  Nonetheless, several witnesses testified as to the facts of the deputy's murder.  Mr. Reyes-Brooks argues that defense counsel should have requested an instruction telling the jury that Mr. Reyes-Brooks had nothing to do with Deputy Cox's murder.

To prevail on this claim, Mr. Reyes-Brooks must show that defense counsel's performance was professionally deficient and that, absent the deficiency, there is a reasonable probability the outcome of the proceeding would have been different.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland,* 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).  Since Mr. Reyes-Brooks's case theory was that Mr. Porter kidnapped him at gunpoint and Mr. Porter alone killed Ms. McCray, the fact that Mr. Porter later acted alone to kill Deputy Cox tended to bolster that theory.  But defense counsel was not ineffective in failing to ask for a limiting instruction. The State never suggested Mr. Reyes-Brooks was involved in the deputy's murder, and in fact the prosecutor stated in closing that Mr. Reyes-Brooks had nothing to do with it.  The evidence against Mr. Reyes-Brooks was otherwise powerful, including DNA evidence tying him to the victim and the murder weapon.

Dkt. 9, Exhibit 17, at 3-4.

Mr. Reyes-Brooks fails to show that the state court adjudication was an unreasonable application of clearly established federal law and therefore, Claim 10 should be denied.

**F.    Claim 11 – Denial of *Franks* Hearing**

In Claim 11, Mr. Reyes-Brooks contends the state court failed to hold a *Franks* hearing to determine the validity of the search warrant in his case.   The Court finds that this claim is barred under *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone v. Powell*, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Powell*, 428 U.S. at 494; *see also Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir.2005).  This is because the United States Supreme Court has determined that while

REPORT AND RECOMMENDATION- 18

implementation of the exclusionary rule at trial and on direct appeal discourages law

enforcement officials from violating the Fourth Amendment, "the additional contribution, if any,

of the consideration of search-and-seizure claims of state prisoners on collateral review is small

in relation to the costs." *Powell*, 428 U.S. at 492–93. Therefore, so long as the petitioner has

been given a full and fair opportunity to litigate his Fourth Amendment claims in state court,

federal habeas review is unavailable. *Id*. at 494.

       The Washington Supreme Court rejected Mr. Reyes-Brooks' claim that the trial court

erred in failing to grant him a *Franks* hearing:

> Mr. Reyes-Brooks next asserts that the affiant who sought a warrant to
> search his residence misled the issuing magistrate. He argues that the trial court
> erred in failing to grant him a hearing on the matter pursuant to *Franks v.
> Delaware,* 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Under
> that decision, a defendant who makes a preliminary showing that a warrant affiant
> made a false statement or omitted relevant information in reckless disregard for
> the truth is entitled to a hearing to determine the validity of the warrant. *State v.
> Garrison,* 118 Wn.2d 870, 872-73, 827 P.2d 1388 (1992).
>
> Mr. Reyes-Brooks specifically contends that the warrant affiant here
> misled the magistrate by not including that the source of some of the information,
> Ms. Moore, was intoxicated when she witnessed the event and that she had a
> significant criminal history. But the information attributed to Ms. Moore by the
> affiant was also corroborated by substantial physical evidence. It is therefore
> unlikely that the magistrate would have disregarded the information Ms. Moore
> provided and found probable cause lacking. *See id.* at 874 (if challenged
> statements are necessary to a finding of probable cause, the warrant is invalid).
> The trial court did not err in failing to hold a *Franks* hearing.

Dkt. 9, Exhibit 17, at 4. Because Mr. Reyes-Brooks had a full and fair opportunity to litigate this

Fourth Amendment claim in state court, *Stone v. Powell* bars federal habeas review of Claim 11

and it should be denied.

**G.**     **Claim 12 – Admission of Evidence of Deputy Cox's Murder**

       In Claim 12, Mr. Reyes-Brooks alleges the superior court improperly admitted evidence

concerning Deputy Cox's murder because there was no evidence that he was involved in the

REPORT AND RECOMMENDATION- 19

1    killing.

2          An allegation that the evidence violated the state evidentiary rule against unduly

3    prejudicial evidence raises a mere issue of state law.  *See Romano v. Oklahoma*, 512 U.S. 1, 10

4    (1994) (not every violation of state law is a constitutional issue).  "[A] federal habeas court may

5    not prescribe evidentiary rules for the states."  *Swan v. Peterson*, 6 F.3d 1373, 1382 (9th Cir.

6    1993).  The alleged violation of state law, including state court rules of evidence, does not

7    provide a basis for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. at 67.

8          Moreover, even if Reyes-Brooks could show his claim rested on clearly established

9    federal law, the state court adjudication of the claim was not unreasonable.  Under pre-AEDPA

10   Ninth Circuit case law, "[c]laims of inadmissibility of evidence are cognizable in habeas corpus

11   proceedings only when admission of the evidence violated the defendant's due process rights by

12   rendering the proceedings fundamentally unfair."  *Hamilton v. Vasquez*, 17 F.3d 1149, 1159 (9th

13   Cir. 1994); *see also Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (petitioner must show

14   evidence rendered trial fundamentally unfair); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.

15   1995) ("Thus, a federal court cannot disturb on due process grounds a state court's decision to

16   admit prior bad acts evidence unless the admission of the evidence was so prejudicial that it

17   rendered the trial fundamentally unfair.").  Here, the state appellate courts determined there was

18   no error because the evidence was properly admitted.

19         The Washington Court of Appeals rejected the claim:

20               Finally, Reyes-Brooks argues that the trial court abused its discretion
         when it admitted evidence regarding Porter's murder of Deputy Cox.  He claims
21       that this evidence was unduly prejudicial and denied him a fair trial.  Evidentiary
         rulings are matters within the sound discretion of the trial court.  State v. Lormor,
22       172 Wn.2d 85, 94, 257 P.3d 624 (2011).  A trial court abuses its discretion if it
         relies on unsupported facts, applies the wrong legal standard, or adopts a position
23       no reasonable person would take.  State v. Lord, 161 Wn.2d 276, 284, 165 P.3d
         1251 (2007).  Here, it was reasonable for the trial court to admit the evidence

REPORT AND RECOMMENDATION- 20

regarding Deputy Cox's murder.  There had been a great deal of media coverage regarding the incident, and the trial court expressed concern that one of the jurors might have assumed that Reyes-Brooks played a role in the officer's death in the absence of testimony to the contrary.  In addition, as discussed above, Reyes-Brooks does not demonstrate he was prejudiced by the evidence.

Dkt. 9, Exhibit 15, at 6-7.

In denying review, the Washington Supreme Court agreed the evidence was properly admitted and did not unduly prejudice Mr. Reyes-Brooks:

> Finally, Mr. Reyes-Brooks contends that the trial court erred by allowing evidence that Mr. Porter murdered Deputy Cox, urging that the evidence was so prejudicial that it clearly outweighed any probative value.  But as noted, the evidence tended to support Mr. Reyes-Brooks's theory of the case, and the State told the jury that Mr. Reyes-Brooks had nothing to do with Deputy Cox's murder. None of the other testimony about Deputy Cox's murder implied that Mr. Reyes-Brooks had anything to do with it. Moreover, the evidence showed how the police connected Mr. Reyes-Brooks, Mr. Porter, and Ms. Moore to the crime, since all three were at the party together, and the gun Mr. Porter used to kill Deputy Cox was the same gun with which he shot Mr. McCray. The trial court did not abuse its discretion in admitting this evidence.  *In re Detention of Post*, 170 Wn.2d 302, 309, 241 P.3d 1234 (2010) (evidentiary ruling will be reversed only upon a showing that the trial court abused its discretion).

Dkt. 9, Exhibit 17, at 4-5.

Mr. Reyes-Brooks fails to show that the state court adjudication of this claim was an unreasonable application of clearly established federal law and therefore, Claim 12 should be denied.

**D.     Certificate of Appealability**

If the district court adopts the Report and Recommendation, it must determine whether a certificate of appealability ("COA") should issue.  Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See*

REPORT AND RECOMMENDATION- 21

28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Reyes-Brooks-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court recommends that Mr. Reyes-Brooks not be issued a COA.  No jurist of reason could disagree with this Court's evaluation of his habeas claims or would conclude that the issues presented deserve encouragement to proceed further.  Mr. Reyes-Brooks should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

The Court recommends **DENYING** Mr. Reyes-Brooks's habeas petition on the merits without an evidentiary hearing, and **DENYING** the issuance of a certificate of appealability.

Any objections to this Recommendation must be filed and served upon all parties no later than **Monday, March 23, 2015.**  The Clerk should note the matter for **Thursday, March 26, 2015,** as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to appeal.

DATED this  3rd  day of March, 2015.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION- 22